**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

MARY BECKER, individually and    :
as Temporary and/or Permanent   :
Administrator of the Estate of    :
JASON HEWITT ARMSDEN,      :
     Plaintiff,             :    CIVIL ACTION NO.
                           :    2:09-CV-00047-RWS-SSC
     v.                 :
                           :
FANNIN COUNTY, GEORGIA,    :
et al.,                   :
     Defendants.        :

## <u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

Now before the Court are the United States' Withdrawal of Certification [Doc. 187] and Motion to Set Aside Substitution of the United States for Gayle Mercer and Georgia Mountains Health Services, Inc.; to Dismiss the United States and FTCA Claims Against It; and to Permit Plaintiff to Revive Her Tort Claims Against Gayle Mercer and Georgia Mountains Health Services, Inc. [Doc. 188] with supporting memorandum [Doc. 188-1] and Declaration of Meredith Torres [Doc. 188-2]; Plaintiff's Response [Doc. 191] and Motion for Leave of Court to File Fourth Amended Complaint Reinstating Gayle Mercer and Georgia Mountains Health Services as Defendants [Doc. 190]; the response of Gayle Mercer and Georgia Mountains Health Services, Inc. in opposition to the United States' motion to set aside [Doc. 197] with supporting memorandum [Doc. 197-1] and exhibits [Docs.

197-2 *et seq.*]; and the United States' Reply in Support of Motion to Set Aside [Doc. 198] with supporting exhibit [Doc. 198-1].

## I.   **Procedural History**

This case concerns the death of Jason Armsden in the Fannin County Jail on April 10, 2007. (Complaint, Dkt. No. [1] at ¶ 14). Plaintiff's Complaint alleges that Mr. Armsden was arrested and booked on April 6, 2007 and died on the morning of April 10 of untreated alcohol withdrawal while in the custody and care of the Fannin County Sheriff's Office and other individual Defendants. (Id. at ¶¶ 17-19, 21). Plaintiff asserts that at the time Mr. Armsden was arrested he was highly intoxicated. (Id. at ¶ 23). Despite his intoxicated state or his subsequent symptoms of alcohol withdrawal, Plaintiff alleges that Defendants collectively failed to provide him with appropriate medical care, ultimately resulting in his death. (Id. at ¶¶ 75, 79). Plaintiff's Complaint alleges violations of the Eighth and/or Fourteenth Amendments of the United States Constitution (Count I), wrongful death under state and federal law (Count III), and negligent or intentional failure to provide medical care (Count V), and seeks punitive damages (Count II) and attorneys fees (Count IV).

Two of the Defendants are Georgia Mountain[s] Health Services, Inc. ("GMHS") and Ga[yle] Mercer ("Mercer") who worked as a nurse for GMHS. (Id. at ¶¶ 5-6, 48). On July 28, 2009, the United States filed a Notice of Substitution [63], seeking to substitute the United States for Defendants GMHS and Mercer. Plaintiff filed an Objection to Notice of Substitution [69]. The United States . . . moved to dismiss the complaint as to Defendants GMHS and Mercer. Plaintiff [then] sought to amend its complaint to specifically allege the basis for this Court's subject matter jurisdiction over the claims against GMHS and Mercer and to add additional individual defendants.

(Doc. 120 at 2-3).[1]

---

[1] Plaintiff filed the original complaint in this action on March 31, 2009 "against several employees of the Fannin County Georgia Sheriff and Fannin County, Georgia," GMHS, and Ms. Mercer. (Doc. 164 at 4; see also Doc. 1).

All citations to the record are to the CM/ECF document and page numbers superimposed

Based on the United States' Scope of Employment Certification [Doc. 62] and Notice of Substitution [Doc. 63], and over Plaintiff's objections to the certification of GMHS and Ms. Mercer as federal employees rather than independent contractors [Doc. 69], this Court (1) granted the Notice of Substitution and dismissed Plaintiff's claims against GMHS and Ms. Mercer because, under the Federal Tort Claims Act ("FTCA"), Plaintiff's exclusive remedy for the acts or omissions of GMHS and Ms. Mercer lay against the United States (Doc. 120 at 3-8); and (2) granted the Motion by Defendant United States of America to Dismiss All Claims Arising from Acts or Omissions of Ga[yle] Mercer and GMHS [Doc. 65] because Plaintiff had not exhausted the FTCA's administrative remedies. (Doc. 120 at 9-14). In pertinent part, the Court stated:

> The United States seeks to substitute itself for Defendants GMHS and Mercer pursuant to the Federal Employees Liability Reform and Tort Compensation Action of 1988 ("Westfall Act"), 28 U.S.C. § 2679, and the Federally Supported Health Centers Assistance Act ("FSHCAA"), 42 U.S.C. § 233. . . .

> The FTCA, as amended by the Westfall Act, provides that the exclusive remedy for persons with claims for damages resulting from the actions of federal employees taken within the scope of their office or employment is a suit against the United States. 28 U.S.C. § 2679(b)(1). The Westfall Act further provides that:

>> [u]pon certification of the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding

on the original documents.

3

> commenced upon such claim in a United States district
> court shall be deemed an action against the United States
> . . . and the United States shall be substituted as the
> party defendant.

28 U.S.C. § 2679(d)(1). The Attorney General has delegated
certification authority to the United States Attorney for the district
where the civil action is brought. 28 C.F.R. § 15.3(a). The United
States submitted a Scope of Employment Certification ("Certification")
[62] that certifies Defendant Mercer was an employee of Defendant
GMHS at all times relevant to this action and that Defendant GMHS
was deemed by the Department of Health and Human Services
("HHS") to be an employee of the Public Health Service ("PHS"), and
therefore an employee of the United States for the purposes of
FSHCAA, at all times relevant to this action. (Certification at 1, citing
Ex. 1 and 42 U.S.C. § 233(g)-(n)).

. . . .

[T]he issue here is . . . whether [GMHS] is a funds recipient under 42
U.S.C. § 254b for which HHS has made a determination deeming it a
PHS employee, or whether an individual whose conduct is in issue is
an employee of such a deemed PHS employee entity.

The FSHCAA provides that:

> Once the Secretary makes a determination
> that an entity or an officer, governing board
> member, employee, or contractor of an entity
> is deemed to be an employee of the Public
> Health Service for purposes of this section,
> the determination shall be final and binding
> upon the Secretary and the Attorney General
> and other parties to any civil action or
> proceeding.

HHS has deemed GMHS an employee of PHS under 42 U.S.C.
§ 233(g). (Declaration of Meredith Torres, Senior Attorney in the
General Law Division, Office of the General Counsel, HHS, Ex. 1 to
Certification, Dkt. No. [62]). HHS has also stated that Defendant

Mercer was an employee of GMHS at all times relevant to this action. . . .

The finding that GMHS is an employee of PHS is binding upon the Court. . . . Mercer is also considered an employee of PHS. 42 U.S.C. § 233(g)(1)(A). Because GMHS and Mercer are employees of PHS, Plaintiff's sole remedy is against the United States.

(Doc. 120 at 3-8).

Thereafter, Plaintiff filed a Motion for Leave of Court to File Third Amended Complaint Adding the United States of America as a Defendant [Doc. 164], seeking to add the United States as a party because, in the interim, Plaintiff had exhausted the FTCA's administrative remedies. (Id. at 6-11). The Court granted Plaintiff's motion and reinstated the United States as a Defendant. [Doc. 166]. Following an extended discovery period, the United States filed its Withdrawal of Certification [Doc. 187], in which it "decline[d] to certify under 28 U.S.C. § 2679 that GMHS and Ms. Mercer were acting within scope of federal employment at the time of the alleged actions attributed to them by plaintiff's pleadings," and the parties then filed the motions now before the Court.

## II.   Motion to Set Aside Substitution of United States [Doc. 188]

The gist of the United States' argument for dismissal is that because "[t]he United States Attorney has withdrawn the previous scope of employment certification issued on July 27, 2009" with regard to GMHS and Ms. Mercer, "the FTCA does not authorize suit against the United States on plaintiff's tort claims against Ms. Mercer and GMHS" as neither was "acting within the scope of federal

5

employment relating to the provision of medical care to detainees at the Fannin County Jail, including Jason Armsden, from April 6 to 10, 2007." (Doc. 188-1 at 1-2). The United States also argues that the Court should dismiss Plaintiff's FTCA claims and permit her to revive her tort claims against GMHS and Ms. Mercer. (Id. at 2).

By way of background, the United States explains that after Plaintiff filed suit in March 2009, HHS informed the United States Attorney for the Northern District of Georgia "that at all relevant times GMHS was deemed to be [a PHS] employee . . . while acting within scope of its federal grants." (Id. at 3). The United States Attorney, in turn, certified to this Court that GMHS and Ms. Mercer were deemed federal employees for the relevant time period of this case, i.e., April 6-10, 2007. (Id. at 2-3). The United States now asserts, based on information allegedly unavailable to the United States Attorney in July 2009, that the "scope certification" for GMHS and Ms. Mercer "was issued in error." (Id. at 4-5; see also Doc. 62). The United States explains:

> [T]he Fannin County Jail was not listed on GMHS's 2007 grant application as a service site or other delivery location as required for inclusion in an application for deeming. Therefore, the provision of medical services at the Fannin County Jail was not within the scope of the grant activity covered by the 2007 deeming determination. Since GMHS was not deemed as to medical care at the Jail, Ms. Mercer and GMHS were not acting within scope of deemed federal employment when providing medical services at the Jail.

(Id. at 5).

AO 72A
(Rev.8/82)

The United States argues that a condition for the FTCA waiver of its sovereign immunity from tort claims involving the acts or omissions of an individual is that the individual was acting within the scope of federal employment at the time of the alleged wrongdoing, and that without this waiver of immunity, the federal courts lack subject matter jurisdiction over claims against the United States. (Id. at 6-9). The United States asserts further that "[s]cope of employment is determined by the United States Attorney" who is authorized to certify such scope, and that if a certification of employment is issued in error, it "may be withdrawn when new or additional information calls for such action." (Id. at 5 (citing 28 C.F.R. § 15.4(a)-(c))).

To support its motion to set aside, the United States offers the Declaration of Meredith Torres, a senior attorney for HHS, who is "responsible for reviewing deeming and scoping documentation presented to HHS with respect to district court litigation." (Doc. 188-2 ¶ 1). Torres declares that under the FTCA and the Federally Supported Health Centers Assistance Act ["FSHCAA"], health center employees of HHS grantees are deemed federal employees and "eligible for FTCA coverage only while providing services within the approved scope of the federal grant project (covered activities)." (Id. ¶¶ 2-3). "FTCA Coverage is applicable only to staff and services that are documented as being within the scope of the approved project" (id. ¶ 3), and then only when the grantee is "deemed" by the

Secretary of HHS to be covered under the FTCA (id. ¶ 4). Ms. Torres declares further:

> FTCA coverage, for purposes of FSHCAA, is restricted to acts or omissions which: (1) are within the approved scope of the project for which a federal grant is received; (2) are within the scope of employment, contract for services, or duties as an officer or director of the corporation receiving the grant; (3) are within the scope of grant activities for which a deeming application has been submitted; and (4) occur on or after the effective date that the Secretary has determined upon proper application for deeming that the health center has met the requirements for FTCA coverage (i.e., receipt of a federal grant and approval of deeming application covering grant activities).

(Id. ¶ 6).

HHS first became aware of the suit against Mercer and GMHS in May 2009; thereafter, based on a review of the "deeming letters" and other documents then available, it certified to the United States Attorney that Ms. Mercer and GMHS were covered by the FTCA. (Id. ¶¶ 8-10). In July 2011, however, upon review of the GMHS grant application for 2007, the HHS determined that the provision of services at the Fannin County Jail ("the Jail") was not covered by the FTCA. (Id. ¶¶ 11-12). Ms. Torres explains:

> [T]he Fannin County Jail was not listed as a proposed service site or other delivery/location on the 2007 grant application. Additionally, no grant amendment was submitted requesting that the BPHC [Bureau of Primary Health Care] add the Fannin County Jail or the treatment of persons detained therein to the locations and activities covered by the 2007 grant. As a consequence, the provision of medical services at the Fannin County Jail was not within the scope of project for 2007, and any treatment rendered at the Fannin County Jail by Ms. Mercer, the nurse who treated the decedent, or any other

8

GMHS provider would have been outside the scope of the federal grant project and thus outside the scope of G[MH]S's and Ms. Mercer's deemed federal employment. This information was not available to our Agency at the time it issued the initial deeming verification declaration and requested that the United States Attorney defend the claims under the FTCA.

(Id. ¶ 12).

The United States asserts that initially—because GMHS had received a PHS grant for calendar year 2007 and had provided medical care at the Jail in April 2007, and because Ms. Mercer was acting within the scope of her GMHS employment during the relevant time period—"the United States Attorney concluded, erroneously, that plaintiff's claim was covered by the FTCA and the FSHCAA, and certified scope of federal employment." (Doc. 188-1 at 14-15). However, according to the United States, after it was reinstated as a party to this action, HHS reviewed "new information" and advised the United States Attorney that because "provision of medical services at the Fannin County Jail was not included in [GMHS's 2007] grant application or any amendment[,] it was not within scope of project and therefore not within the scope of G[MH]S's and Ms. Mercer's deemed federal employment." (Id. at 15; see Doc. 188-2 ¶¶ 12, 13).

Accordingly, the United States explains, the United States Attorney issued a Withdrawal of Certification, dated October 18, 2011, stating that "additional information now available to HHS and the Department of Justice definitively establishes that [during] the [relevant] time [period] . . . GMHS and Ms. Mercer

were not engaged in any covered activities at a site within the scope of GMHS's federal grant project; therefore, they were not engaged in activities covered by HHS's deeming for 2007, and were not acting within the scope of federal employment." (Doc. 188-1 at 15-16). In conclusion, the United States argues that because the scope of employment certification has been withdrawn, "the FTCA does not apply to [P]laintiff's claims," there has been no waiver of the United States' sovereign immunity, "[P]laintiff's FTCA claim must be dismissed" and the United States must be dismissed as a party. (Id. at 17).

### III.  **Response of Ms. Mercer and GMHS [Doc. 197]**

In their response, Ms. Mercer and GMHS provide the following pertinent background information: "On October 13, 2006, GMHS submitted its fiscal year 2007 Section 330 Grant application ('FY 07 Grant') to HHS' Health Resources and Services Administration ('HRSA')." (Doc. 197-1 at 4). "HRSA issued its Notice of Grant Award ('NGA') on February 28, 2007." (Id.). Meanwhile, on January 29, 2007, GMHS and the Jail contracted regarding "certain medical screenings and other services to jail detainees." (Id. at 2). In its grant application, GMHS did not include the Jail as a service site: "GMHS could not submit the FY 07 Grant with the Fannin County Jail information because GMHS did not enter into the contract with the Fannin County Jail until approximately three (3) months after the grant's submission." (Id. at 5-6). However, Ms. Mercer and GMHS assert further,

GMHS did include the Fannin County Jail in its fiscal year 2008 Section 330 Grant application ("FY 08 Grant") <u>on Part C listed under "Other Activities/Locations"</u>.  HRSA readily accepted the Fannin County Jail designation as an additional activity and location in Part C and did not require any change to GMHS' Part A or Part B application sections, demonstrating that HRSA did not categorize the Fannin County Jail as a change of service or site.

(<u>Id.</u> at 6 (citation and footnote omitted)).

Ms. Mercer and GMHS contend that "the United States' argument hinges on whether GMHS was required to receive prior HRSA approval for the Fannin County Jail activity," and the United States has failed to show that "such a requirement existed." (<u>Id.</u> at 7-8).  They argue that "the addition of the Fannin County Jail was an extension of GMHS' stated objective and mission statement, as opposed to a change in the scope or objective of the program." (<u>Id.</u> at 9).  They argue further that "the United States must demonstrate that the Fannin County Jail activity was a change to GMHS' sites or services from the FY 07 Grant," which it cannot do because the Jail was not a "service location" and therefore "was included under 'Other Activities/Locations' in Part C of its annual renewal grant submission for 2008." (<u>Id.</u> at 9, 10 (citation omitted)).  In addition, they contend, "HRSA does not place the same emphasis on grant project descriptions in Part C that it does to service and site changes in Part A and B." (<u>Id.</u> at 10).  They argue that because HRSA allowed GMHS to list the Jail in Part C of its fiscal year 2008 grant application, GMHS's provision of "intermittent screening services" at the Jail in 2007, which did not constitute the "regular, scheduled" provision of services, did

11

not alter the sites or services covered under the HHS grant. (Id.; see also Doc. 197-7).

Ms. Mercer and GMHS also argue that, given GMHS's difficult financial situation, decertification will have "national policy implications" regarding the health care safety net that GMHS and similar organizations provide to poor communities such as Fannin County, Georgia. (Doc. 197-1 at 11-13). They argue further that because GMHS had FTCA coverage under Part C of its 2007 HHS grant for community health screenings and house calls, it "made the logical determination that the occasional, sporadic health screenings at the local community jail constituted a form of 'other activity/location' where it would provide services to its target community, [as] opposed to the permanent medical facility sites reported in Part B." (Id. at 12-13). Finally, Ms. Mercer and GMHS argue that "it would be a manifest injustice if the United States [were] allowed to withdraw certification two years later based on facts that it had constructive knowledge of when the certification was made." (Id. at 13). They assert, "HHS has not discovered new facts; rather, it has arbitrarily changed its position," and "[t]o allow HHS and the United States Attorney to 'pull the rug out' from GMHS two years into the litigation based on facts already known to HHS would be a manifest injustice." (Id.).

## IV.    United States' Reply [Doc. 198]

The United States replies that Ms. Mercer and GMHS are incorrect when they argue that they are entitled to FTCA coverage despite GMHS's failure to specify the provision of services at the Jail in its 2007 grant application, either originally or by amendment. (Doc. 198 at 2-3). "There is nothing in PIN 2002-07[2] suggesting that only sites and activities an applicant believes it must include in part B of the grant package require express deeming, or that items the applicant relegates to Part C 'Other Activities/Locations' are covered by an HHS deeming whether listed or not." (Id. at 3). The United States asserts that the GMHS Change of Scope application for 2008 reveals that the services provided at the Jail qualified it as a service site for which specific approval was required before activity there could be deemed within the scope of federal employment, as opposed to "limited service arrangements with multiple locations of a certain type" (see Doc. 188-2 at

---

[2] PIN 2002-07 is the Policy Information Notice issued by the Bureau of Primary Health Care on December 31, 2001, "intended to clarify scope of project issues, improve consistency, and provide guidance concerning change in scope requests." (Doc. 188-2 at 11). With respect to sites where an HHS grantee's services are offered, the PIN states as follows:

> A site is any place where a health center provides services to a defined geographic service area or population on a regular, scheduled basis (e.g., daily, weekly, or monthly) regardless of the number of hours per week, and does so as part of the project. Sites are where the health center generates encounters by documenting face-to-face contacts between patients and providers who exercise independent judgment in the provision of services to the individual. They can include, but are not limited to, health care facilities, schools, migrant camps, homeless shelters, and mobile medical vans where health care services are provided. *Those sites at which the health center regularly provides care must be listed in Exhibit B (sites) of the Single Grant Application to be considered for inclusion in the scope of project;* however, for limited service arrangements with multiple locations of a certain type, health centers may list the type of location in Exhibit B rather than each individual location.

(Id. at 14-15 (emphasis added)).

13

15), for which only the location type need be included in the grant application.[3]

(Doc. 198 at 4). According to the United States,

> GMHS does not quarrel with the government's analysis of the
> applicable law showing that only sites and services included in the
> scope of project may be deemed, and that FTCA coverage is available
> only after HHS has deemed the health center and is limited to
> activities within the scope of the project defined by the grant package.
> The parties' submissions show that the provision of services at the jail
> was not within GMHS's scope of project in 2007, and specifically, at
> the time Jason Armsden was detained at the Fannin County Jail in
> April 2007. Therefore, GMHS could not have been deemed a federal
> employee for services at the jail, and FTCA coverage was not available
> to it for services at the jail.

(Id. at 5).

With respect to the "manifest injustice" argument, the United States notes

that GMHS "demonstrated its understanding of a need to amend its scope of

project to add services at the jail, as evidenced by its 2008 grant renewal package

disclosing that it had submitted a change of scope application for the specific

purpose of adding provision of medical services at the jail, and [GMHS] admits that

it did not seek to amend scope of project for 2007." (Id. at 6). "Thus," the United

---

[3] The United States points out that GMHS submitted a Change of Scope application for 2008 "to provide medical services to the Fannin County Sheriffs Department," which GMHS described as follows:

> This program requires a mid-level provider to visit the department
> approximately 12 hours each week. Inmates requesting "sick call" are
> seen and triaged for care. Inmates requiring more extensive care than
> can be provided by GMHS are referred to appropriate specialists. The
> contract is profitable and will prove to be helpful in reaching the
> Business Plan goals of GMHS.

(Doc. 198-1 at 4).

States contends, "to the extent it was acting under assurance that activities within scope of its project were covered by the FTCA, it understood that services at the jail were not within scope until it gained approval of its change of scope application." (Id.). Finally, the United States argues that "[n]o principle o[f] equity or justice authorizes a court to waive the sovereign immunity of the United States," which this Court would have to do to retain jurisdiction over Plaintiff's claims against the United States now that the certification of Ms. Mercer and GMHS as federal employees has been withdrawn. (Id.; see also id. at 7, 9-10).

## V. **Plaintiff's Response to Motion to Set Aside [Doc. 191] and Motion for Leave of Court to File Fourth Amended Complaint [Doc. 190]**

Plaintiff does not oppose the United States' motion to set aside the prior substitution of parties. [Doc. 191]. In fact, Plaintiff seeks to amend her complaint a fourth time to reinstate Ms. Mercer and GMHS as defendants in light of their prior dismissal from this case, following the United States' certification that they were not liable individually to Plaintiff under the FTCA, a certification the United States now admits was erroneous. (Doc. 190 at 9). Plaintiff notes that the United States has moved " 'to permit plaintiff to revive her tort claims against Ms. Mercer and GMHS.' " (Id. at 8 (quoting Doc. 188 at 2)).

## VI. **Discussion**

As noted above, HHS's scope of employment determination with respect to a PHS grantee and its employees is binding. (Doc. 120 at 7); see also 42 U.S.C.

15

§ 233(g)(1)(F).  Nevertheless, it is "[t]he United States Attorney for the district where the civil action or proceeding is brought . . . [who] is authorized to make the statutory certification that the Federal employee was acting within the scope of his office or employment with the Federal Government at the time of the incident out of which the suit arose."  28 C.F.R. § 15.4(a).  Moreover, the United States Attorney's "certification . . . may be withdrawn if a further evaluation of the relevant facts or the consideration of new or additional evidence calls for such action."  28 C. F. R. § 15.4(c).

"[T]he scope-of-employment certification is reviewable in court."  Gutierrez De Martinez v. Lamagno, 515 U.S. 417, 420 (1995).  Although the certification is "*prima facie* evidence" of the scope of employment, when the certification is challenged, "the district court [is] to decide the issue *de novo*."  Flohr v. Mackovjak, 84 F.3d 386, 390 (11th Cir. 1996); see also S.J. & W. Ranch, Inc. v. Lehtinen, 913 F.2d 1538, 1543 (11th Cir. 1990), amended 924 F.2d 1555 (11th Cir. 1991).  In the more typical case, "the burden of altering the status quo by proving that the employee acted outside the scope of [federal] employment is . . . on the plaintiff."  Id. (internal quotation omitted); see generally id. at 390-93 (discussing more typical case in which Attorney General certified that defendant employee acted within scope of federal employment and the burden of altering that determination was held to be on plaintiff who opposed certification).  In this case, where Plaintiff is not seeking to prove that the actions of GMHS and Ms. Mercer fell within the scope

16

of federal employment following the withdrawal of certification by the United States Attorney, the undersigned finds that the burden of proving that they acted within the scope of federal employment, contrary to the United State's decertification, falls on Ms. Mercer and GMHS. See Green v. Hall, 8 F.3d 695, 698 (9th Cir. 1993) (explaining that "the party seeking review bears the burden of presenting evidence and disproving the Attorney General's decision to grant or deny scope of employment certification by a preponderance of the evidence" and citing S.J. & W. Ranch, Inc., 913 F.2d at 1543 for the proposition that "burden of proof lies with party seeking to 'alter[ ] the status quo' as determined by the Attorney General")), cert. denied, 513 U.S. 809 (1994)[4]; Feldheim v. Turner, 743 F. Supp. 2d 551, 556 (E.D. Va. 2010) (finding that the burden of challenging the Attorney General's denial of the scope certification fell on the defendant employee because the court saw "no reason for the legal standard and burden of persuasion with respect to petitions challenging *denials* of scope certification to be any different from that

---

[4] The court in Green noted that "if the Attorney General denies certification, as he did here, the employee may petition the court for certification," citing 28 U.S.C. § 2679(d)(3). Green, 8 F.3d at 698. In Jamison v. Wiley, 14 F.3d 222 (4th Cir. 1994), the court considered the Justice Department's withdrawal of a scope certification and explained, "[t]he Justice Department's withdrawal of the scope certification left the district court free to conduct its own independent inquiry into the scope-of-employment issue under [28 U.S.C.] § 2679(d)(3) for purposes of substitution, if asked to do so by Wiley," the employee challenging the withdrawal. Id. at 235-36. The court acknowledged that "Wiley made no formal request to the court to 'find and certify' that he had been acting in the scope of his employment" pursuant to § 2679(d)(3), but noted that "he did actively oppose Jamison's request to have him reinstated as defendant," an action the court found was "sufficient to satisfy § 2679(d)(3)." Id. at 236.

outlined in *Gutierrez* for challenges to *grants* of scope certification" (emphases in original)).[5]

Here, HHS has reevaluated the relevant scope-of-employment facts and determined that Ms. Mercer and GMHS were not acting within the scope of federal employment, i.e., within the scope of GMHS's 2007 grant application, when they provided medical services at the Jail in April 2007. Ms. Mercer and GMHS acknowledge that there was no explicit mention of the Jail in the 2007 grant application, but argue that the Jail was included by implication in "Other Activities/Locations" because the services provided at the Jail were similar to services provided at other locations for which no specific site reference was required. However, PIN 2002-07 and GMHS's own 2008 grant application, which sought a change in the scope of its 2007 grant to include services provided at the Jail, defeat this argument. (See Doc. 188-2 at 14-15; Doc. 198-1 at 4).

Ms. Mercer and GMHS's argument based on GMHS's 2008 grant application, in which the Jail is listed in Part C under "Other Activities/Locations," is unavailing, because it is undisputed that regardless of how the Jail was treated under GMHS's grant application for 2008 and subsequent years, the Jail was not included in the 2007 grant application, either originally or by amendment. Ms.

---

[5] The court in Feldheim acknowledged that this was an issue of first impression in that circuit, but explained that "[o]ther courts examining the issue have found that the petitioner seeking review bears the burden of presenting evidence and must carry his burden by a preponderance." 743 F. Supp. 2d at 556 (listing cases).

18

Mercer and GMHS's acknowledgment that the Jail was listed by name in GMHS's 2008 grant application undercuts their argument that—despite the Jail's omission from the 2007 grant application—HHS, the United States Attorney, and this Court may not rely upon that omission to deny Ms. Mercer and GMHS FTCA coverage for the services they provided at the Jail in 2007.

The Court agrees with the United States that GMHS's failure to amend its 2007 grant application to include the Jail as a service location is "unfortunate," but the consequences of that failure must fall upon GMHS, not the United States, whose sovereign immunity protects it from tort actions brought against individuals who were acting outside the scope of their federal employment. (See Doc. 198 at 9-10). Ms. Mercer and GMHS have not met their burden of showing that the withdrawal of the United States Attorney's prior certification that they were federal employees while providing medical services at the Jail in April 2007 is incorrect under the governing statutes and regulations. Accordingly, that withdrawal of certification constrains this Court to grant the United States' motion for dismissal under the doctrine of sovereign immunity. See, e.g., JBP Acquisitions, L.P. v. United States ex rel. FDIC, 224 F.3d 1260, 1263 (11th Cir. 2000) (stating that the FTCA "provides a limited waiver of sovereign immunity[,] making the United States liable for 'injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission *of any employee of the Government while acting within the scope of his office of employment*'" (quoting 28 U.S.C.

19

§ 1346(b)(1) (emphasis added))).

**VII.** **Conclusion**

For the foregoing reasons, **IT IS RECOMMENDED** that

1.     the United States' Motion to Set Aside Substitution of the United States for Gayle Mercer and Georgia Mountains Health Services, Inc.; to Dismiss the United States and FTCA Claims Against It; and to Permit Plaintiff to Revive Her Tort Claims Against Gayle Mercer and Georgia Mountains Health Services, Inc. [Doc. 188] be **GRANTED**;

2.     Plaintiff's Motion for Leave of Court to File Fourth Amended Complaint Reinstating Gayle Mercer and Georgia Mountains Health Services as Defendants [Doc. 190] be **GRANTED** under Fed. R. Civ. P. 16(b)(4) because there is good cause for modifying the Court's Scheduling Order (see Doc. 49 at 9; Doc. 54) and under Fed. R. Civ. P. 15(a)(2) because "justice so requires," in light of the procedural history of this case;

3.     the United States be **DISMISSED** from this action;

4.     Plaintiff's Fourth Amended Complaint [Doc. 190-1] be **DOCKETED** as the operative complaint in this action;

5.     Ms. Mercer and GMHS be **REINSTATED** as Defendants in this action, via Plaintiff's Fourth Amended Complaint; and

AO 72A
(Rev.8/82)

6.    should the District Court Judge adopt this Report and Recommendation, Ms. Mercer and GMHS be **ORDERED** to respond to the Fourth Amended Complaint within twenty (20) days thereafter.

**SO RECOMMENDED** this 3rd day of July, 2012.


*Susan S. Cole*
SUSAN S. COLE
United States Magistrate Judge

AO 72A
(Rev.8/82)