# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### GAINESVILLE DIVISION

| | | |
|---|---|---|
| MARY BECKER, | : | CIVIL ACTION NO. |
| Individually and as Administrator of | : | 2:09-CV-00047-RWS-JCF |
| the Estate of | : | |
| JASON HEWITT ARMSDEN, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| FANNIN COUNTY, GEORGIA, et al., | : | PRISONER CIVIL RIGHTS |
| Defendants. | : | 42 U.S.C. § 1983 |

## <u>ORDER</u>

This case involves the death of Jason Armsden in April 2007 due to acute alcohol withdrawal while a pretrial detainee at the Fannin County Jail ("Jail").[1] Plaintiff, the administrator of Armsden's estate, has sued twenty separate Defendants, eighteen of whom have moved for summary judgment. The Magistrate Judge recommends that the Court do the following:

(1)    grant summary judgment to Fannin County and to Fannin County Sheriff Dane Kirby on Plaintiff's federal and state-law claims, and to the other sixteen individual Defendants in their official capacities on Plaintiff's federal claims;

(2)    grant summary judgment to the following ten Defendants in their individual capacities on Plaintiff's 42 U.S.C. § 1983 claims:

---

[1]Armsden arrived at the Jail on Friday evening, April 6, 2007, and expired on Tuesday morning, April 10. (*See* Doc. 306 at 6 *et seq.*).

      (a)     former Sheriff George Ensley and Captain Gregory Newman;
      (b)     Jail Shift Supervisor Sgt. Janella Verner and one other supervisor;
      (c)     Jail Officer Earl Mashburn and three other officers; and
      (d)     Fannin County Road Deputies Marc White and Larry Davenport;[2]

(3)     decline to exercise supplemental jurisdiction and dismiss without prejudice all of Plaintiff's state-law claims against the foregoing ten Defendants;

(4)     as to Emergency Medical Technicians ("EMTs") Randy Epperson and Zeke Watkins:

      (a)     grant summary judgment on Plaintiff's state-law claims; and
      (b)     deny summary judgment on Plaintiff's federal claims against them in their individual capacities;

(5)     deny summary judgment on Plaintiff's federal and state-law claims, including Plaintiff's claims for punitive damages, to the following four Defendants in their individual capacities:

      (a)     Jail Shift Supervisors Sgts. Carol Davenport and Jillian Bailey; and
      (b)     Jail Officers Roger Pulliam and Joe Raper.

(Doc. 306 at 104-05).

The Court has received objections from the following parties:

(1)     the EMTs (Doc. 308);

---

[2]The Magistrate Judge recommends granting summary judgment on Plaintiff's federal claims to Sergeant Hollie Phillips and Jail Officers Mitchell Mason, John Arp, and Chad Ensley. (Doc. 306 at 104-05). Plaintiff does not object, and the Court finds no plain error in these recommendations.

(2)     Plaintiff, who objects to the Magistrate Judge's recommendations regarding

the following Defendants (Doc. 309):

    (a)     Fannin County and former Sheriff Ensley in his official capacity;
    (b)     Captain Newman in his individual capacity;
    (c)     Jail Officer Mashburn in his individual capacity;
    (d)     Shift Supervisor Sgt. Verner in her individual capacity;
    (e)     Road Deputy White in his individual capacity; and
    (f)     Road Deputy Davenport in his individual capacity;

(3)     Shift Supervisor Sgt. Davenport (Doc. 310);

(4)     Shift Supervisor Sgt. Bailey and Jail Officer Raper (Doc. 311); and

(5)     Jail Officer Pulliam (Doc. 312).

The Court has also received replies to Plaintiff's objections from (1) Sheriff

Kirby and Fannin County (Doc. 313); (2) Captain Newman (Doc. 314); (3) Officer

Mashburn and Sgt. Verner (Doc. 315); and (4) Road Deputies Davenport and White

(Doc. 316).

In accordance with 28 U.S.C. § 636(b)(1) and Rule 72 of the Federal Rules of

Civil Procedure, the Court has conducted a *de novo* review of those portions of the

Report to which the foregoing parties object, and has reviewed the remainder of the

Report for plain error.[3]  *See United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir.

---

[3]The Magistrate Judge has summarized the facts of this case at length in his very thorough
Report and Recommendation.  (*See* Doc. 306 at 4-27 (factual background); *id.* at 31-39 (Plaintiff's

1983).

## I. The EMTs' Objections (Doc. 308)

The EMT Defendants object to the Magistrate Judge's conclusion that because Sgt. Verner testified that they suspected Armsden was suffering from drug or alcohol withdrawal, they were subjectively aware that Armsden had a serious medical need requiring immediate attention. (Doc. 308 at 1-2). They argue that their own testimony "confirms that they did not associate the phrase 'drug or alcohol withdrawal' with the serious medical condition of DTs." (*Id.* at 3 (footnote omitted)). Watkins testified that he had not been trained to handle an inmate experiencing alcohol withdrawal or DTs. Epperson testified that "he did not know that DTs can be [] life threatening." (*Id.*). The EMTs contend that Sgt. Verner's testimony that they told her that Armsden "probably needed to go somewhere and dry out" reveals that they had no subjective awareness that Armsden's life was in danger. (*Id.* at 3-4 (internal quotations omitted)).

---

§ 1983 official-capacity claims); *id.* at 48-57 (Plaintiff's § 1983 individual-capacity claims against Newman); *id.* at 58-63 (against Sgts. Davenport and Bailey and Officers Pulliam and Raper); *id.* at 66-70 (against Sgt. Verner and Officer Mashburn); *id.* at 72-79 (against the EMTs); *id.* at 80-85 (against the Road Deputies); *id.* at 86-95 (qualified immunity from, and punitive damages for, Plaintiff's federal claims); *id.* at 95-104 (Plaintiff's state-law claims)).

4

They argue further that although their failure to secure a medical history on Armsden might have been negligent, it did not constitute deliberate indifference. They "were presented with [a] patient [with] stable vital signs and for whom they had been given no medical history, [and they] treated [the] condition that presented at that time, namely the cut on [his] face." (*Id.* at 5; *see id.* at 6). They argue that the Magistrate Judge has misunderstood their role—which is to "treat what they see," to handle "acute emergent situations"—and they fulfilled that role precisely in this case. (*Id.* at 5). The EMTs argue further that they are entitled to qualified immunity because there is no precedent in this Circuit holding EMTs, who are not *jail officials*, liable for deliberate indifference to acute alcohol withdrawal, and there also is no precedent even *addressing*, must less establishing, a pre-trial detainee's right to emergency medical care. (*Id.* at 7-8).

"To satisfy the subjective element of [a] deliberate indifference [claim, a] . . . Plaintiff must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005) (internal quotations omitted) (noting that subjective knowledge requires that the defendant " 'must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious

5

harm exists, *and* [] must also draw the inference' " (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added in quoted material)).  But "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."  *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007) (internal quotations omitted).

The EMTs' argument on the lack of precedent to deny them qualified immunity, on the ground that an EMT is not a jail official, is not well-taken.  The Eleventh Circuit's holdings in *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419 (11th Cir. 1997), and *Morrison v. Washington County*, 700 F.2d 678 (11th Cir. 1983), "should have put *any government actor* on notice that delayed or inadequate treatment of alcohol withdrawal would be unlawful."  *Harper v. Lawrence County*, 592 F.3d 1227, 1237 (11th Cir. 2010) (emphasis added).  It was also clearly established in April 2007 that "deliberate indifference may be [proven] by a showing of grossly inadequate care as well as by a decision to take an easier but less efficacious course of treatment," or "when the need for treatment is obvious, [by] medical care which is so cursory as to amount to no treatment at all."  *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (internal quotations omitted) (citing *Steele v. Shah*, 87 F.3d 1266, 1269-70 (11th Cir. 1996); *Mandel v. Doe*, 888 F.2d

783, 788-89 (11th Cir. 1989); *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989); *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985)). And the law of deliberate indifference applicable to convicted prisoners under the Eighth Amendment also applies to pretrial detainees under the Fourteenth Amendment. (*See* Doc. 306 at 39-40).

The federal courts are nevertheless not in the business of second guessing the judgments of medical professionals. *See Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995) ("Mere negligence in diagnosing or treating a medical condition is an insufficient basis for grounding liability on a claim of medical mistreatment under the Eighth Amendment."); *see id.* at 1547 (concluding that the medical provider's "failure to administer stronger medication" to a prisoner who subsequently died was "a medical judgment and, therefore, an inappropriate basis for imposing liability under section 1983"); *see also Williams v. Barrow*, 559 Fed. Appx. 979, 984-85 & n.5 (11th Cir. 2014) (affirming dismissal of deliberate indifference claim against doctor—who denied appellant's prescribed post-surgery occupational therapy and the full term of his prescribed physical therapy, and who also eventually terminated appellant's pain medication despite his complaints of increasing pain—because the doctor's decisions " 'are classic example[s] of a matter for medical judgment and

therefore not an appropriate basis for grounding liability under the Eighth Amendment' " (quoting *Poag*, 61 F.3d at 1545); and noting that " '[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment' " (quoting *Estelle v. Gamble*, 429 U.S. 97, 107 (1976) (wherein the Supreme Court also stated that "the question whether an X-ray – or additional diagnostic techniques or forms of treatment – is indicated is a classic example of a matter for medical judgment"))).

Although the issue is close and the Court is troubled by what might be deemed the EMTs' "willful blindness" to Armsden's condition, the Court is also mindful of the high bar for success on Plaintiff's deliberate indifference claim—requiring proof that the EMTs not only were aware of facts from which to infer a substantial risk of serious harm to Armsden, but also that they actually drew that inference. The Court concludes that there is insufficient record evidence to create a genuine issue for trial as to whether the EMTs actually drew that inference, which they deny. And it is not this Court's role to second guess their medical judgments in this matter. Thus there is no genuine issue for trial as to whether the EMTs may be held liable for their decision not to provide any treatment to Armsden other than for the cut on his face

8

and not to recommend to Jail officials that he receive emergency treatment for his psychological and/or substance withdrawal problems.

## II.     Plaintiff's Objections (Doc. 309)

Plaintiff objects generally to the Report and Recommendation by arguing that the Magistrate Judge "has erred on several key points by construing the facts in a manner more favorably to individual defendants, whose testimony is self-serving[,]" rather than to Plaintiff, the non-moving party, as is required on summary judgment review. (Doc. 309 at 18; *see* Doc. 306 at 27).

### A.     Official Capacity Claims Against Fannin County

Plaintiff first objects to the Magistrate Judge's conclusions that Captain Newman was not a final policymaker for Fannin County and that his personal participation in the handling of Armsden's treatment did not represent County policy. Plaintiff argues that Sheriff Ensley's delegation of authority to Capt. Newman over virtually all aspects of Jail operations was sufficient to render Newman a final policymaker for the County. (Doc. 309 at 3-7). Plaintiff states that she "has, indeed, presented sufficient evidence concerning Newman's personal participation to invoke . . . municipal . . . liability upon the Captain." (*Id.* at 7). Plaintiff argues that "the

Sheriff was a mere figurehead" with respect to "day-to-day operations" at the Jail, "having little or nothing to do with" them. (*Id.* at 4).

The Court disagrees. Sheriff Ensley's deposition testimony reveals that he retained the authority to review all of Capt. Newman's decisions regarding Jail operations. (*See* Sheriff Ensley Dep. (Doc. 271) at 10-12 (testifying that "jail operations were [his] ultimate responsibility"; that "Newman [was not] able to enact standard operating procedures for jail operations without [the Sheriff's] approval and authorization"; and that Newman could modify booking procedures, but only if he told the Sheriff "because ultimately [the changes] required [the Sheriff's] authorization")); *see also Doe v. Sch. Bd.*, 604 F.3d 1248, 1264 (11th Cir. 2010) (noting that the Eleventh Circuit has "strictly interpreted [the Supreme Court's] policy or custom requirement to preclude § 1983 liability for a subordinate official's decisions when the final policymaker delegates decisionmaking discretion to the subordinate, but retains the power to review the exercise of that discretion" (internal quotations omitted)).

## B.    Individual Capacity Claims Against Captain Newman

Plaintiff next objects to the Magistrate Judge's crediting of Newman's self-serving testimony that he first learned about Armsden's condition on Tuesday

10

morning, less than two hours before his death, when there is evidence to the contrary

in the record, including a Georgia Bureau of Investigation ("GBI") report that

Newman stated on Tuesday April 10 that he first learned about Armsden on the

previous morning. (Doc. 309 at 7-8; *see* Doc. 267-19 at 2). Plaintiff argues that there

is record evidence to support a factfinder's conclusions that Newman first learned

about Armsden on Saturday morning, and on Monday morning he "learned that

Jailers believed Armsden was suffering from DTs [*delirium tremens*] and was

disoriented and hallucinating and in need of a medical examination — *we know this*

*because this is what Newman told the GBI homicide investigator*." (Doc. 309 at 8).

Plaintiff argues that because Newman was trained "to recognize the symptoms and

severity . . . of untreated alcohol withdrawal," his "conscious failure on Monday to

. . . ensure [that] medical care was provided [to Armsden] constitutes . . . direct

participation by a supervisor, which invokes liability on a personal level" sufficient

to support a jury finding. (*Id.* at 8-9).

     The Court agrees in part with Plaintiff's objection. There is conflicting record

evidence as to when Newman learned of the following—Armsden's condition,

Armsden's escape attempt, and Sgt. Davenport's notation in her incident report that

Armsden may be suffering from DTs—and this conflicting evidence must be

construed in the light most favorable to Plaintiff. The Court therefore declines to adopt the Magistrate Judge's recommendation that Captain Newman be granted summary judgment in his individual capacity, but adopts the recommendation that Plaintiff's theories of supervisory liability are not properly before the Court and that Newman may not be held liable in his individual capacity on that basis. (*See* Doc. 306 at 54-57). And for the same reason that the Court adopts the Magistrate Judge's recommendation to exert supplemental jurisdiction over Plaintiff's state-law claims against Sergeants Davenport and Bailey and Officers Pulliam and Raper, the Court declines to adopt the Magistrate Judge's recommendation regarding Plaintiff's state-law claims against Captain Newman and exerts supplemental jurisdiction over those claims as well.

### C.  **Jailer Mashburn**

Plaintiff next objects that there is evidence that Jail Officer Mashburn received relevant information about Armsden's condition on Monday morning because Sgt. Davenport testified that she told everyone with whom she worked about Armsden's condition, which would have included Mashburn. (Doc. 309 at 9). Plaintiff notes that Mashburn then observed throughout his Monday shift that "Armsden appeared

sickly," but he failed to inform Nurse Mercer early Monday evening that Armsden

needed to be examined. (*Id.* at 10).

> Reasonable jurors, upon hearing the testimony of the medical examiner
> that Armsden experienced a period of seizures prior to death, and that
> none of the jailers, including Mashburn, observed this or even attempted
> to revive Armsden (although they had allegedly checked on him no
> more than 5 to 10 minutes prior to the time they found him
> unresponsive), could well conclude that Mashburn was deliberately
> indifferent toward Mr. Armsden.

(*Id.* at 11).

The Court rejects this objection. There is only speculation, based on a chain

of inferences derived tenuously from evidence in the record, that Officer Mashburn

was sufficiently informed during the Monday day shift about the possible severity of

Armsden's condition to enable a factfinder to conclude that his inaction during that

shift constituted deliberate indifference to Armsden's serious medical needs. This

speculation is insufficient to create a genuine issue for trial on Plaintiff's deliberate

indifference claim against Mashburn. Indeed, it was Mashburn who initiated the call

for the return of the EMTs to examine Armsden on Tuesday morning, and there is

record evidence that Mashburn suggested to the EMTs that Armsden be taken to the

hospital, a suggestion that tragically went unheeded. (*See* Doc. 306 at 66-68; Doc.

275 (Mashburn Dep.) at 17, 46-47; Doc. 267-26 (Mashburn's April 10 GBI

Statement) at 2). In any event, Mashburn was entitled to rely on the medical judgment of the EMTs, who chose not to transport Armsden to the hospital and did not find that he was experiencing a medical emergency.

### D. Sergeant Verner

With respect to Sgt. Verner, the Day Shift Supervisor at the Jail on the Monday before and on the Tuesday when Armsden died, Plaintiff objects to the recommendation of summary judgment in her favor because "not only did the Jail policies require that Sgt. Davenport advise Sgt. Verner of Armsden's DTs, it is incredibly implausible that Davenport would not have told Sgt. Verner about these things[,]" and "Sgt. Verner's denials of receiving such information are unbelievable, and would not convince the average reasonable Juror." (Doc. 309 at 12). Plaintiff notes that Verner does not deny that she received this information, testifying only that she does not remember, and notes further that after speaking with Davenport on Monday morning she decided to keep a close watch on Armsden. (*Id.* at 12-13). Plaintiff objects that the Magistrate Judge has "completely construed the facts most favorably to Sgt. Verner . . . . [and] completely overlooks the policies and procedures of the jail, Verner's implausible failures to remember important events concerning

14

a death, and the experience that Jurors will bring with them into the courtroom." (*Id.* at 13 (footnote omitted)).

> As much as anyone in this tragic series of events, Sgt. Verner knew on Monday morning that Jason Armsden was suffering from DTs. She had a full day to seek medical attention for him, including having the nurse examine Armsden when she came around 5:00 PM Monday. Instead, Verner stood by while Armsden withered and died from alcohol withdrawal.

(*Id.* at 14).

Although this objection has greater merit than Plaintiff's objection regarding the recommendation to dismiss Mashburn, it ultimately fails for the same reasons. There is insufficient record evidence to create a genuine issue for trial as to whether the information about Armsden's condition that Sgt. Verner actually had before her during the Monday day shift, including her observations of him while escorting him to and from an investigator's interview, was enough to enable a factfinder to conclude that her failure to draw the inference that Armsden had a serious medical need, which she then ignored, constituted deliberate indifference. And by Tuesday morning, she was entitled to rely on the medical judgment of the EMTs, who had attended to Armsden twice during the interval between her Monday and Tuesday shifts.

15

### E. **Road Deputy White**

Plaintiff finds troubling the Magistrate Judge's conclusion that "it cannot be said that Armsden's alcohol withdrawal should have been so obvious to Deputy White based solely on Armsden's disorientation and confusing statements" during the Monday morning escape attempt. (*Id.* at 15 (internal quotations omitted)). Plaintiff is troubled because, she argues, "Even in the absence of alcohol withdrawal, Deputy White should have been alarmed by the fact that an inmate who had been slammed against a wall, was bleeding from the face, and who was now stating: 'where am I?' and 'why am I here?' was not experiencing a medical emergency." (*Id.* at 15). Plaintiff argues that "reasonable jurors could find that White was deliberately indifferent in failing to summon medical attention for either alcohol withdrawal or a serious head injury." (*Id.* at 16).

The Court finds that there is no genuine issue for trial as to whether Deputy White ever had enough contact with Armsden, or information about him, to draw the inference that he had a serious medical need. At the time of Armsden's arrest on Friday evening, he was extremely intoxicated and could not have been experiencing the symptoms of alcohol *withdrawal*. And White's brief encounter with Armsden on Monday morning was insufficient to put him on notice that Armsden was suffering

from anything more than the temporary effects of having his head slammed into a wall during an apparent escape attempt.

**F.      Road Deputy Davenport**

Finally, Plaintiff objects to the Magistrate Judge's conclusion that there is no evidence that Deputy Davenport had actual knowledge of Armsden's withdrawal symptoms, basing that conclusion on this Court's earlier ruling that his private conversations with his wife, Sgt. Davenport, were inadmissible. (*Id.* at 16). Plaintiff argues that there is sufficient evidence to allow a reasonable juror to conclude that Deputy Davenport was subjectively aware of Armsden's serious medical needs, and yet took no remedial action, based on Deputy Davenport's other, admissible conversations with his wife—when Armsden was first brought to the Jail on Friday night and Deputy Davenport "ordered" her, under the threat of disciplinary action, not to take Armsden to the hospital to be evaluated or to summon the EMTs; when Deputy Davenport took no action in response to his wife's query during their mutual shift on Saturday night asking whether she should summon the EMTs; and when Sgt. Davenport informed Deputy Davenport about the escape attempt on Monday morning.  Plaintiff argues that the Magistrate Judge's conclusion to the contrary is,

17

again, based on a construction of the facts more favorable to Davenport rather than to Plaintiff, the non-moving party. (*Id.* at 17-18).

Plaintiff's objection to the Magistrate Judge's recommendation regarding Deputy Davenport also fails because there is no evidence that Davenport ever personally observed Armsden at any time while he was at the Jail or that he had any responsibilities with respect to the medical care of Armsden or any other Jail inmate. Thus there is no genuine issue for trial as to whether Deputy Davenport had sufficient information to draw the inference that Armsden was experiencing a serious medical need related to alcohol withdrawal. The Court finds troubling, however, the manner in which Deputy Davenport intervened to prevent Armsden from obtaining a medical screening on the night of his arrest, a screening that may well have saved his life. Although Deputy Davenport may not be held liable here under the high threshold for a finding of deliberate indifference to Armsden's serious medical needs, he is far from blameless in the events that unfolded leading to Armsden's death.

## III. The Jail Supervisors' And Jail Officers' Objections (Docs. 310-312)

The Jail Supervisors and Jail Officers have submitted substantially similar objections. (*See generally* Docs. 310-312). Sergeant Davenport begins by stating that the Magistrate Judge's "most unusual error" is the "proposed holding that [she]

18

can be liable for not managing to make medical personnel appear, even though medical personnel *appeared twice*" before Armsden died, and on neither occasion did they diagnose him with DTs or find that he needed medical treatment other than the treatment they had provided. (Doc. 310 at 2). She argues that her

> personal involvement with Armsden was limited to observations of Armsden, and later referral of a medical request for Armsden, which unfortunately did not produce a response by the nurse. Plaintiff simply quarrels with the way that Davenport responded to Armsden's then-unknown malady, which did not present an apparent emergency. Sergeant Davenport cannot be liable under § 1983 for her limited personal role.

(*Id.* at 10). She argues further that her actions do not constitute cruel and unusual punishment because when she "dealt with Armsden he was undiagnosed and it was not clear that [he] had a serious medical need, much less a need for emergency care. Nevertheless, [she] responded by requesting evaluation by the nurse, even though Armsden never requested medical attention." (*Id.* at 11).

Sgt. Davenport contends that the Magistrate Judge has confused hindsight, which reveals that Armsden died of cardiac arrest associated with alcohol withdrawal, "with actual knowledge by a lay jailer that Armsden was experiencing undiagnosed alcohol withdrawal." (*Id.* at 12-13). "It is error to hold that a lay jailer inflicts 'cruel and unusual punishment' where the jailer sees manifestations of non-life-threatening

19

characteristics in an otherwise unknown detainee, and fails to identify the specific condition or danger involved with *delirium tremens*." (*Id.* at 12). She argues that her response to Armsden's condition, requesting that the Jail Nurse evaluate and care for him, was objectively reasonable and not the unnecessary and wanton infliction of pain required to support a deliberate indifference claim. (*Id.* at 13-14). She contends that because "Armsden's symptoms seemed at most flu-like and did not appear emergent to EMS medics on *two occasions*, long after [her] last relevant shift ended and even hours before Armsden's death[,] Plaintiff cannot show that [she] subjectively knew that further or more immediate medical care was required for Armsden." (*Id.* at 15).

Sgt. Davenport contends that because it is not "beyond debate" whether or not her actions showed deliberate indifference to a serious medical need, she is entitled to qualified immunity from Plaintiff's § 1983 claims. (*Id.* at 6-8). She objects to the Magistrate Judge's reliance on a 2010 Eleventh Circuit case to show that it was clearly established in April 2007 that her conduct was unlawful. She contends that two earlier Eleventh Circuit cases holding that acute alcohol withdrawal is a serious medical need can be distinguished because "the individual jail officers had *actual knowledge* that (**1**) the inmate was an alcoholic, *and* (**2**) the inmate was suffering or

20

was very likely to experience severe alcohol withdrawal symptoms, but (**3**) no medical care was provided at a relevant time, namely before serious physical injury resulted." (*Id.* at 17-19 (footnote omitted) (noting that she lacked any notice that Armsden was an alcoholic; his symptoms mimicked those of the flu; and "between [his] escape attempt and his interview with Inv. Panter [later that same morning], the evidence is that he displayed ample stamina and lucidity, signs that would tell any reasonable lay jailer that he was not suffering from a life threatening (and certainly not emergent) medical condition, even if he was under the weather").

Sgt. Davenport also argues that the evidence is insufficient to support a claim for punitive damages under either federal or state law (*id.* at 20-21), or a claim for pain and suffering (*id.* at 27-28), and that official immunity bars Plaintiff's state-law claims because Sgt. Davenport did not violate any discretionary duty to Armsden with actual malice or an intent to injure him, nor did she negligently perform any ministerial duty owed to Armsden under state law (*id.* at 23-27 (also objecting to the Magistrate Judge's reliance upon a non-binding Georgia decision regarding the duty under Georgia law to provide inmates with medical care)).

The remaining objections, from Sgt. Bailey and Officer Raper (Doc. 311) and Officer Pulliam (Doc. 312), are virtually identical to those from Sgt. Davenport. (*See*

Doc. 311 at 2-5, 8 (noting that Bailey's and Raper's "personal involvement with Armsden was substantially limited"); Doc. 312 at 2-6, 8 (noting that "Officer Pulliam's personal involvement with Armsden was limited to observations of Armsden and providing him with food and blankets")).

And for the most part, Sergeants Davenport and Bailey and Officers Raper and Pulliam have repeated in their objections the same arguments that they raised in their motions for summary judgment. (*See* Docs. 250-7, 250-8, 250-9). The Magistrate Judge considered these arguments and found them wanting. For the reasons discussed in the Report and Recommendation, the Court overrules the objections of these four Defendants and adopts the Magistrate Judge's recommendation that there is at least a genuine issue of fact for trial as to the liability of each of them with respect to Plaintiff's federal and state-law claims. By doing so, the Court is not holding that any of them is liable for cruel and unusual punishment based on deliberate indifference to Armsden's serious medical needs, as their objections suggest, but rather the Court is merely holding that there is sufficient uncertainty in the record evidence, viewed in the light most favorable to Plaintiff, to allow the claims against them to proceed to a factfinder to make that ultimate determination.

AO 72A
(Rev.8/82)

**IV.    Conclusion**

The Court finds no error, plain or otherwise, in the remainder of the Magistrate Judge's Report and Recommendation, which the Court **ADOPTS** with the three exceptions noted above.

1.    The Court **GRANTS** summary judgment to, and **DISMISSES** from this action, the following Defendants: Fannin County; Fannin County Sheriff Dane Kirby; former Fannin County Sheriff George Ensley; Fannin County Jail Shift Supervisors Sergeants Holly Phillips and Janella Verner; Fannin County Jail Officers Mitchell Mason, Chad Ensley, John Arp, and Earl Mashburn; Fannin County Road Deputies Marc White and Larry Davenport; and Fannin County EMTs Zeke Watkins and Randy Epperson.[4]

2.    With respect to Fannin County Jail Captain Greg Newman, the Court **GRANTS** partial summary judgment on Plaintiff's federal claims against him in his official capacity and in his individual supervisory capacity; otherwise **DENIES**

---

[4]The state-law claims against all individual Defendants except Sheriff Kirby and the EMTs are **DISMISSED without prejudice**; all of the remaining claims against these thirteen Defendants are **DISMISSED with prejudice**, including the state-law claims against Sheriff Kirby and the EMTs.

23

summary judgment on Plaintiff's federal claims against him in his individual capacity; and **DENIES** summary judgment on Plaintiff's state-law claims.

3.     With respect to Fannin County Jail Shift Supervisors Sergeants Carol Davenport and Jillian Bailey, and Fannin County Jail Officers Roger Pulliam and Joe Raper, the Court **GRANTS** partial summary judgment on Plaintiff's federal claims against them in their official capacities; **DENIES** summary judgment on Plaintiff's federal claims against them in their individual capacities; and **DENIES** summary judgment on Plaintiff's state-law claims.

     **IT IS SO ORDERED** this  29th  day of September, 2014.


**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)